Elvis MIMBS, Plaintiff,

v.

**COMMERCIAL LIFE INSURANCE COMPANY, Defendant.**

No. CV390–023.

United States District Court, S.D. Georgia, Dublin Division.

April 22, 1993.

Kathleen Faye Thalgott and Johnny Wilmer Warren, Dublin, GA, for plaintiff.

Wilson Randolph Smith, Newton, Smith, Durden, Kaufold & Rice, P.C., Vidalia, GA, for defendant.

## ORDER

BOWEN, District Judge.

By Order entered January 8, 1993, the Court raised a jurisdictional issue rooted in the possibility that the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93–406, 88 Stat. 832 (1974) (codified as amended at 29 U.S.C. §§ 1001–1461), might pre-empt one or more of Plaintiff's state-law claims and convert them into federal claims. The Court invited the parties to submit briefs on the issue, and they did so. For the reasons set forth below, the Court (1) determines that some of the state-law causes of action asserted by Plaintiff in the original Complaint are indeed pre-empted by ERISA, and (2) directs the Plaintiff to file an amended complaint.

## I. BACKGROUND

Prior to May 1984, Plaintiff owned and operated a "Photo Hut" located in Dublin, Georgia. On or about May 1, 1984, Plaintiff sold his interest in the business to Gaston Enterprises, Inc. (Gaston) and thereafter became an employee of Gaston. Plaintiff subsequently repurchased the Photo Hut facility from Gaston in December 1986 and again operated the Photo Hut as a sole proprietor.

At the time Plaintiff ceased employment with Gaston in December 1986, group insurance coverage was provided to Gaston's employees. Plaintiff asserts he "exercise[d] the right to 'Continuation Coverage' under the group health plan afforded all employees of Gaston ..., pursuant to 29 U.S.C. § 1161...." (Pl.'s State.Undisp.Facts at 2.)

In October 1987, Defendant Commercial Life Insurance Company (Commercial Life) became the provider of group insurance coverage for Gaston's employees. Plaintiff allegedly elected in July 1988 to convert his continuation group health coverage to an individual policy following expiration of the continuation coverage period. Commercial Life issued a conversion policy to Plaintiff, to become effective August 1, 1988. Commercial Life later replaced this conversion policy with another policy that provided broader coverage and was made effective retroactive to August 1, 1988.

Plaintiff has asserted various state-law claims against Commercial Life. The Complaint sets forth five causes of action, based upon Defendant's alleged (1) failure to provide and verify medical insurance under extended benefits provisions of the continuation coverage, and under the conversion policy, at the time of a planned hospitalization for surgery in September 1988,[1] constituting a wrongful termination of contract; (2) failure to initially offer appropriate conversion plan options, resulting in a denial of contractual benefits; (3) failure to continue life insurance benefits during a period of disability, constituting a breach of contract; (4) failure to pay medical insurance benefits promptly and in accordance with the insurance contract, constituting a breach of contract; and (5) tortious misfeasance, based upon the alleged breaches of contract combined with Commercial Life's "complete disregard for the consequences of its actions...." (Compl. at 13.) Plaintiff invokes the jurisdiction of this Court based upon diversity of citizenship.

Although the Complaint alleges damages in excess of $50,000.00, Defendant moved to dismiss for lack of subject-matter jurisdiction, asserting that Plaintiff cannot, as a matter of law, recover the requisite amount. Defendant also moved in the alternative for summary judgment, based upon defenses grounded in state law.[2] After the parties filed supporting and opposing briefs and materials, it appeared to the Court that jurisdiction in this case might be based upon a federal question, as some of Plaintiff's state-law claims might be pre-empted by ERISA and converted into federal ERISA claims (thus possibly pretermitting resolution of state law issues raised in Defendant's motions). Because the determination that an insurance plan or policy is governed by

---

1. The Complaint alleges that Mr. Mimbs presented both the continuation coverage policy and the conversion policy to the hospital. (Compl. at 3–4.)

2. Defendant has also made allegations of fraud in a counterclaim for rescission of insurance contracts and recovery of benefits paid.

ERISA is necessarily dependent upon the particular fact-pattern in a case,[3] and the parties had not addressed the issue, the Court invited the parties to file briefs on questions of ERISA pre-emption and claim conversion, and denied Defendant's motions without prejudice to renewal.

## II. ANALYSIS

### A. Determination of Subject Matter Jurisdiction Generally

■ The substance of jurisdictional allegations may be supported or challenged by reference to extra-pleading material. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350, at 213 (2d ed. 1990). The pleading itself "will be read as a whole with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation, and with all uncontroverted factual allegations being accepted as true." *Id.* at 219–20. The Court may resolve factual disputes concerning jurisdictional issues, *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 469 F.2d 416, 418 (5th Cir.1972),[4] and may grant leave to amend a complaint to cure jurisdictional defects, 5A Wright & Miller, *supra*, § 1350, at 217.

### B. ERISA Pre-emption Generally

■ ERISA expressly pre-empts state laws that relate to "employee benefit plans," but does not pre-empt those that relate to employee benefits only. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7–8, 107 S.Ct. 2211, 2215, 96 L.Ed.2d 1 (1987) (citing 29 U.S.C. § 1144). Under ERISA, "employee benefit plan" is defined to include "employee welfare benefit plan," 29 U.S.C. § 1002(3), which is in turn defined to mean

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or

their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

*Id.* § 1002(1); *see Donovan v. Dillingham*, 688 F.2d 1367, 1370–73 (11th Cir.1982) (discussing requirements codified at 29 U.S.C. § 1002).

■ The "relate to" pre-emption clause is interpreted expansively: a state law " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). ERISA pre-emption extends to state-law causes of action that relate to an employee benefit plan. *Cockey v. Life Ins. Co.*, 804 F.Supp. 1571, 1574 (S.D.Ga.1992) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39 (1987)). "[A] state law cause of action 'relates to' an employee benefit plan if the ... conduct giving rise to such claim was not 'wholly remote in content' from the benefit plan." *Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791, 794 (11th Cir.1989) (citation omitted). Although state statutes that regulate insurance are exempted from ERISA pre-emption, 29 U.S.C. § 1144(b)(2)(A), the exemption does not encompass laws rooted in general principles of state tort and contract law, *see Pilot Life*, 481 U.S. at 50, 107 S.Ct. at 1554.

### C. ERISA Pre-emption as Applied to Plaintiff's Claims

■ *1. Employee Welfare Benefit Plan.* The threshold question is whether the group insurance coverage provided to Gaston's employees was an "employee welfare benefit plan" governed by ERISA. As stated in Plaintiff's brief, "[t]here is no dispute that the Plaintiff was employed by Gaston ... and that during that period of employment, he was insured under a group health insurance program...." (Pl.'s Br.Regard.

---

**3.** *See Donovan v. Dillingham*, 688 F.2d 1367, 1370–73 (11th Cir.1982) (summarizing requirements codified at 29 U.S.C. § 1002); 29 C.F.R. § 2510.3–1(j) (setting forth conditions under which a plan does not qualify as an "employee welfare benefit plan").

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**1560**

ERISA at 4.) Plaintiff argues now, however, that "[t]he company simply provided group health coverage," and that there was no ERISA plan. (Pl.'s Br.Regard. ERISA at 3.)

■■■ The determination that a plan is governed by ERISA does not turn upon the existence of a formal, written, self-contained plan. *Donovan,* 688 F.2d at 1372–73. Although ERISA sets out certain fiduciary and reporting requirements, fulfillment of those requirements by plan fiduciaries and administrators is not a prerequisite to coverage under ERISA. *Id.* at 1372. Instead, "it is the *reality* of a plan, fund, or program ... that is determinative." *Id.* at 1373 (emphasis added). In sum,

> a "plan, fund, or program" under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits. To be an *employee* welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits; the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish or maintain the plan, fund, or program.

*Id.*

From the record, one can reasonably ascertain that there was a welfare benefit plan, with health and life insurance as intended benefits, Gaston employees as the intended class of beneficiaries, an identifiable source of

financing,[5] and specific procedures for receiving benefits. (*See* Dep. of Sue Smith & Defendant's Exhibits cited therein; Dep. of Elvis Mimbs & Defendant's Exhibits cited therein.) As Defendant aptly notes, "[t]he deposition of Sue Smith [a Gaston employee responsible for accounting] is replete with correspondence and other documentation confirming that Gaston ... adopted a plan to provide group health insurance benefits to its employees, that Dun & Bradstreet Plan Services administered the plan, ... and it was, in fact, a legitimate plan...." (Def.'s Supp. Br. at 3.)

Furthermore, as Defendant correctly points out, "Plaintiff has argued throughout this case that his actions in electing continuation coverage and in selecting an individual policy at the end of the 18 month continuation privilege were undertaken in the exercise of his rights *under ERISA.*" (Def.'s Supp.Br. at 2–3) (emphasis added). As discussed below, the rights to continuation group health coverage and a conversion health policy arise *out of the existence of an ERISA plan.*

**2. *Relationship Between Plaintiff's State–Law Claims and the Employee Benefit Plan.***

■■ (a). The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub.L. No. 99–272, Title X, § 10002(a), 100 Stat. 227 (1986), amended ERISA and requires that sponsors of ERISA group health plans[6] provide plan beneficiaries the option to elect "continuation coverage" for a limited period following employment termination under certain conditions ("qualifying events"). 29 U.S.C. §§ 1161(a), 1162(2).[7] This continuation coverage is required to be identical to coverage provided under the plan. *Id.*

---

5. The Smith deposition and documents cited therein reveal that Gaston was billed for the premiums. The parties' briefs do not specifically discuss whether any portion of the premiums was in turn paid by Gaston's active employees. In any event, "[w]here a plan is presented to employees as one belonging to the employer's benefits package ..., as opposed to merely permitting the insurer to publicize the program to employees, the plan is an 'employee welfare benefit plan' under ERISA ... even though the employees pay the premiums." *Cockey,* 804 F.Supp. at 1575. Because the record indicates Gaston presented the group plans as belonging to its benefits package, whether Gaston's employees

ultimately contributed any portion of the premiums is inconsequential.

6. "Group health plan" is defined as "an employee welfare benefit plan providing medical care ... to participants or beneficiaries directly or through insurance, reimbursement, or otherwise." 29 U.S.C. § 1167(1).

7. An exemption is provided for "any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b). The record indicates Gaston did not

§ 1162(1). COBRA also requires that ERISA group health plans provide the option of enrolling in a "conversion health plan otherwise generally available under the plan" at the end of the continuation coverage period. 29 U.S.C. § 1162(5).

Plaintiff here argues that, in conjunction with his voluntary termination as a Gaston employee, "he exercised his right for 'continuation coverage.' ..." (Pl.'s Br.Regard. ERISA at 4.) COBRA continuation coverage is integrally related to an ERISA plan: the statutory right to continuation coverage is predicated upon the existence of an ERISA plan, 29 U.S.C. § 1161(a); the continuation coverage must be identical to that coverage provided under the ERISA plan, *id.* § 1162(1); and modification of the plan coverage must also apply to the continuation coverage, *id.* Indeed, continuation coverage is defined as "*coverage under the plan ....*" *Id.* § 1162 (emphasis added). Accordingly, any claim that Defendant wrongfully terminated a contract by failing to provide and verify coverage under extended benefits provisions of the continuation group health coverage, and that Defendant breached a contract by failing to promptly pay benefits under that continuation coverage, relates to the ERISA plan and is pre-empted by ERISA.

■ (b). Plaintiff argues also that, "following the termination of 'continuation [group health] coverage,' [he] exercised his right to contract directly with the insurance company ... for a conversion policy...." (Pl.'s Br.Regard. ERISA at 4.) Like continuation coverage, the right to a COBRA conversion option is predicated upon the existence of an ERISA plan. *Howard v. Gleason Corp.,* 901 F.2d 1154, 1157 (2d Cir.1990); *see* 29 U.S.C. § 1162(5). COBRA defines what conversion options must be offered by reference to the ERISA plan. 29 U.S.C. § 1162(5). Any claim that Defendant failed to offer proper conversion plan options is essentially a claim that Defendant violated Plaintiff's conversion rights; such a claim relates to the ERISA

plan and is pre-empted by ERISA. *Cf. Howard,* 901 F.2d at 1156–59 (holding state-law claim based on alleged failure to give proper notice of right to convert is pre-empted by ERISA).

■ (c). This Court draws a distinction, however, between claims arising from the right to convert to an individual policy and claims arising from the conversion policy itself. Neither party cites any binding precedent upon this precise point, and this Court is not persuaded by the opinion in *Nechero v. Provident Life & Accid. Ins. Co.,* 795 F.Supp. 374 (D.N.M.1992).[8] In *Nechero,* plaintiffs sued the defendant insurance company for breach of contract, breach of good faith and fair dealing, infliction of emotional distress, violation of a state statute governing unfair insurance practices, and unreasonable delay in paying claims, all based upon the defendant's alleged failure to pay benefits under conversion health coverage obtained pursuant to COBRA. *Id.* at 376. The district court found that ERISA governed the conversion policy, because the conversion policy itself qualified as an ERISA plan, and, alternatively, because the conversion plan was "integrally connected" to the ERISA group plan in which the former-employee plaintiff had previously participated. *Id.* at 377–81. The court then held that ERISA pre-empted the plaintiffs' state-law claims. *Id.* at 380–81.

*Nechero's* finding that the conversion plan constituted a separate ERISA plan established by the employer hinged upon the employer's administrative role in "initiating or implementing" the conversion plan. *Id.* at 379. The court viewed the employer's efforts to "launch" the individual conversion policy as establishing a separate ERISA plan. *Id.* But efforts to fulfill COBRA's requirements for offering a conversion option merely administer a benefit arising from an existing ERISA plan. The conversion coverage itself, should the former employee elect to convert, is for an individual as opposed to a class of beneficiaries. There is no showing that the

qualify for this exemption at times material to Plaintiff's claims. (See Dep. of Sue Smith at 34.)

8. Contrary to Defendant's brief, this Court did not unequivocally state in its January 8, 1993, order that "conversion policies are governed by ERISA pre-emption." (Def.'s Supp.Br. at 3.)

Instead, the Court noted that *"[i]f* a plaintiff's state law claims concerning ... a conversion policy are deemed to 'relate to' an 'employee benefit plan' governed by ERISA ..., then ERISA would pre-empt those claims against Defendant." (Order Jan. 8, 1993, at 8–9) (emphasis added).

conversion coverage in this case contains the requisite elements of an ERISA plan. Furthermore, once conversion has occurred and the policy is in force, there is no longer any "integral connection" between the individual conversion policy and the ERISA plan that gave rise to the right to convert. *But see Beal v. Jefferson–Pilot Life Ins. Co.*, 798 F.Supp. 673, 675 (S.D.Ala.1992) (finding conversion policy governed by ERISA because right to convert arose from existence of ERISA plan).

The concerns behind ERISA pre-emption are not implicated by state-law claims arising from obligations incurred under the conversion policy itself. In *Fort Halifax, supra,* the Supreme Court reviewed the purpose of the ERISA pre-emption provision:

> Congress intended [ERISA] pre-emption to afford ... the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans,* rather than simply to *benefits.*

*Fort Halifax,* 482 U.S. at 11, 107 S.Ct. at 2217. There is no showing that administering benefits under the individual conversion policy itself, once that policy is in effect, requires an ongoing program to meet the (former) employer's obligations under ERISA. The connection between a state-law breach-of-contract claim for verification of coverage and payment of benefits allegedly due under the conversion policy appears to be too "tenuous, remote, [and] peripheral" to warrant a finding that the claim under the conversion coverage relates to the ERISA plan and is pre-empted by ERISA. *See Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

 (d). Plaintiff also alleges breach of contract based upon Defendant's failure to continue life insurance benefits during a period of disability. Plaintiff's Complaint states that he had this coverage "as part of his initial group coverage," and that the "life insurance policy provided for continued coverage, even without payment of premium, during a period of disability." (Compl. at 10.) This cause of action is essentially one to enforce Plaintiff's rights under the terms of the ERISA plan. Accordingly, the claim relates to the ERISA plan and is pre-empted by ERISA.

 (e). Finally, Plaintiff asserts a cause of action for tortious misfeasance, based upon Defendant's alleged "complete disregard for the consequences of its actions" underlying the breach-of-contract claims. (Compl. at 13.) To the extent this tort claim is based upon those breach-of-contract claims that relate to the ERISA plan (as discussed above), then the tort claim also relates to the ERISA plan and is pre-empted by ERISA.

### D. Conversion of Claims and Federal Jurisdiction

 If a plaintiff asserts a state-law claim that is pre-empted by ERISA, but that claim falls within the scope of ERISA's civil enforcement provision,[9] then the pre-empted claim is converted into a federal ERISA claim, and jurisdiction over that claim is founded upon a federal question. *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1196 (11th Cir.1991).[10] If any one of Plaintiff's pre-empted claims is converted into a federal ERISA claim, then this Court may exercise pendent jurisdiction over remaining state-law claims that are *not* pre-empted, provided "[t]he state and federal claims ... derive from a common nucleus of operative fact" and "plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding...." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).[11]

9. 29 U.S.C. § 1132.

10. The Court notes, however, that "[b]inding case law in this circuit holds that a plaintiff must exhaust administrative remedies before suing under an ERISA plan policy." *Merritt v. Confedera-*

*tion Life Ins. Co.*, 881 F.2d 1034, 1035 (11th Cir.1989) (per curiam).

11. The doctrine of pendent claim jurisdiction set forth in *Gibbs* has since been codified under the name of "supplemental jurisdiction" at 28 U.S.C. § 1367. The statute itself, however, applies to

## III. CONCLUSION

The following causes of action set forth in Plaintiff's original Complaint are pre-empted by ERISA: the first cause of action insofar as it concerns Defendant's conduct with respect to the continuation group health coverage; the second cause of action; the third cause of action; the fourth cause of action insofar as it concerns Defendant's conduct with respect to the continuation group health coverage; and the fifth cause of action insofar as it concerns Defendant's conduct with respect to the continuation group health coverage, Plaintiff's right to convert, and the life insurance coverage.

The following causes of action set forth in Plaintiff's original Complaint are *not* pre-empted by ERISA: the first cause of action insofar as it concerns Defendant's obligations under the conversion health plan; the fourth cause of action insofar as it concerns Defendant's obligations under the conversion health plan; and the fifth cause of action insofar as it concerns Defendant's obligations under the conversion health plan.

Plaintiff shall have ten (10) days from the date of this Order in which to file, if he can, an amended complaint which: (1) expressly frames any or all of the above pre-empted causes of action as claims within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132; and (2) shows that this Court has jurisdiction over any or all of the above state-law causes of action that are not pre-empted by ERISA.

Defendant shall have twenty (20) days after service of such an amended complaint in which to file an answer, a renewed motion to dismiss or for summary judgment, and any materials in support of such renewed motion or motions. Plaintiff shall have twenty (20) days after the filing of any renewed motion in which to file a response and supporting materials.

those actions commenced on or after December 1, 1990; this action commenced May 21, 1990.