**Elvis MIMBS, Plaintiff,**

v.

**COMMERCIAL LIFE INSURANCE COMPANY, Defendant.**

No. CV390–023.

United States District Court, S.D. Georgia, Dublin Division.

Aug. 31, 1993.

Kathleen Faye Thalgott, Johnny Wilmer Warren, Dublin, GA, for plaintiff.

Wilson Randolph Smith, Newton, Smith, Durden, Kaufold & Rice, P.C., Vidalia, GA, for defendant.

## ORDER

BOWEN, District Judge.

In accordance with the previous order of this Court, *Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556 (S.D.Ga.1993), Plaintiff Elvis Mimbs filed an Amended Complaint against Defendant Commercial Life Insurance Company (Commercial Life). Commercial Life filed an Answer to the Amended Complaint,[1] followed by a motion to dismiss,

---

1. Commercial Life responded to the original Complaint with an answer and a counterclaim,

and, in the alternative, for summary judgment. For the reasons stated below, the motion is treated as one for summary judgment, and summary judgment for Commercial Life is granted in part and denied in part.

## I. BACKGROUND

Much of the background of this case was set forth in the Court's previous order and is restated in pertinent part as follows:

> Prior to May 1984, Plaintiff owned and operated a "Photo Hut" located in Dublin, Georgia. On or about May 1, 1984, Plaintiff sold his interest in the business to Gaston Enterprises, Inc. (Gaston) and thereafter became an employee of Gaston. Plaintiff subsequently repurchased the Photo Hut facility from Gaston in December 1986 and again operated the Photo Hut as a sole proprietor.
>
> At the time Plaintiff ceased employment with Gaston in December 1986, group insurance coverage was provided to Gaston's employees. Plaintiff asserts he "exercise[d] the right to 'Continuation Coverage' under the group health plan afforded all employees of Gaston ..., pursuant to 29 U.S.C. § 1161...." [citation omitted.]
>
> In October 1987, Defendant Commercial Life Insurance Company (Commercial Life) became the provider of group insurance coverage for Gaston's employees. Plaintiff allegedly elected in July 1988 to convert his continuation group health coverage to an individual policy following expiration of the continuation coverage period. Commercial Life issued a conversion policy

> to Plaintiff, to become effective August 1, 1988.

*Mimbs,* 818 F.Supp. at 1558.

Plaintiff's Amended Complaint contains, inter alia, the following factual allegations: Plaintiff was given a cardiac stress test on September 7, 1988, and he was subsequently sent to the Medical Center of Central Georgia in Macon for further evaluation. Following his admittance there, diagnostic testing revealed blockage of three coronary arteries and an immediate need for cardiac bypass surgery.

Mr. Mimbs further alleges that, in the meantime, a hospital official who repeatedly attempted to verify Mr. Mimbs's insurance coverage with Commercial Life in advance of surgery was unable to obtain confirmation of coverage from the company. The Macon hospital subsequently dismissed Mr. Mimbs on September 15 without performing the needed procedure. Mr. Mimbs then sought assistance elsewhere to obtain the surgery, and he was finally admitted to the Medical College of Georgia in Augusta on October 15; cardiac bypass surgery was performed on October 17.

Mr. Mimbs claims that the 32–day waiting period between his discharge from the Macon hospital and his surgery at the Medical College of Georgia caused irreparable damage to his heart, as a subsequent echocardiogram revealed that his heart's pumping functions had irreparably diminished in the interim. Mr. Mimbs was allegedly disabled and forced to sell his business at a loss as a result of the delay caused by Defendant Commercial Life.

The Amended Complaint invokes this Court's diversity jurisdiction and purports to set forth various state-law claims against Commercial Life,[2] including: (1) failure to

---

but did not file a counterclaim in response to the Amended Complaint. The Amended Complaint and the Answer to the Amended Complaint now supersede the original pleadings, of course.

**2.** The Court previously determined that certain state-law claims set forth in the original Complaint were preempted by provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. *Mimbs,* 818 F.Supp. at 1559–63. The Court then directed Plaintiff

> to file, if he can, an amended complaint which: (1) expressly frames any or all of the ... pre-

> preempted causes of action as claims within the scope of ERISA's civil enforcement provision, 29 U.S.C. § 1132; and (2) shows that this Court has jurisdiction over any or all ... state law causes of action [set forth in the original complaint] that are not pre-preempted by ERISA.

*Mimbs,* 818 F.Supp. at 1563. The Amended Complaint reveals that Plaintiff was either unable or unwilling to frame pre-preempted claims as ERISA claims.

provide and verify medical insurance coverage under the conversion policy, constituting wrongful termination of contract; (2) failure to pay medical insurance benefits promptly and in accordance with the conversion contract; and (3) tortious misfeasance as a result of Commercial Life's "complete disregard for the consequences" of the alleged breaches of contract.

Plaintiff seeks general damages for pain, suffering, and loss of enjoyment of life in the amount of $250,000. In addition, Plaintiff lists special damages as follows:

| | |
|---|---:|
| Loss upon forced sale of business | $ 2,201.68 |
| Loss of earnings (8 years) | 200,000.00 |
| Hospital bills, 1989 | 657.70 |
| Medicine and doctor bills, 1989 | 1,028.39 |
| Insurance premiums paid to Defendant, 1989 | 2,751.74 |
| Other medical expenses | 6.19 |
| Total: | $206,865.70 |

## II. ANALYSIS

### A. Motion to Dismiss

Commercial Life argues two grounds for dismissal: lack of the requisite jurisdictional amount-in-controversy and failure to state a claim for which relief can be granted. Because the arguments presented in support of dismissal go to the merits of Mr. Mimbs's claims, and Commercial Life cites matters outside the pleadings in support of the motion, the Court will apply the standards for summary judgment to Commercial Life's motions. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1350, at 235 (2d ed. 1990) (where decision on jurisdictional issue requires ruling on merits of case, decision should await determination of merits either by court on summary judgment motion or by fact-finder at trial); Fed. R.Civ.P. 12(b) (when matters outside pleadings are presented to and not excluded by court on motion to dismiss for failure to state claim, motion shall be treated as one for summary judgment).

### B. Motion for Summary Judgment

1. *Requirements for Summary Judgment.* The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case ..., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–08 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely *stating* that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

2. *Plaintiff's Breach of Contract Claims.*

(a) Failure to Verify Coverage.

■ Commercial Life argues that it had no contractual *duty* to verify the insured's coverage, and that its failure or refusal to verify was therefore not a breach of the contract. Commercial Life offers a copy of policy number 946, attached to the deposition of Mr. Mimbs, as evidence in support. (Def.'s Exh. 12.) The policy in evidence does not expressly impose a duty upon Commercial Life to make pre-claim verification of coverage to a medical services provider on behalf of the insured.

Commercial Life is, however, obligated under the express terms of the policy to make payment for medical services upon the filing of a claim by the insured for covered treatment. The Court takes judicial notice that, due to the high cost of major medical treatment, individuals who obtain such treatment typically depend upon insurance of some kind to cover much if not most of the bill.[3] In the current health-care market, absent pre-claim verification of insurance coverage, patients may be forced to leave a hospital without receiving needed treatment—even though they are insured for the medical services they seek to obtain—because they lack other sufficient financial resources to pay the costs of treatment.

It is one thing for a health care insurer to reduce its exposure to risk by taking steps to encourage the insured's good health; it is quite another to hinder the insured's ability to file a claim by failing or refusing to make pre-claim verification of coverage for needed services. "If a contract is such that a certain performance by one party is necessary in order to earn the compensation that has been promised him, and that performance can not be rendered without the active co-operation of the other party, a promise to render such co-operation will usually be implied." 3 Arthur L. Corbin, *Corbin on Contracts* § 570 (1960). Furthermore, "[i]n any kind of contract, if the right of one party to compensation is conditional upon the rendition of some . . . performance by him or on his behalf, it is nearly always a breach of contract for the other party to act so as to prevent or to hinder and delay . . . the performance of the condition." *Id.* § 571.

■ This Court concludes that there is such a duty of co-operation and non-hindrance implied in the health insurance contract at issue here. Whether Commercial Life's conduct in this matter constituted a breach of such implied contractual duty is a question of material fact and presents a genuine issue which must be resolved at trial.

3. *See generally* David D. Griner, Note, *Paying the Piper: Third-Party Payor Liability for Medical Treatment Decisions,* 25 Ga.Law Rev. 861, 864– 86 (1991) (discussing health insurance industry and high cost of medical care).

(b) Failure to Pay Benefits Promptly and in Accordance with the Contract.

■ Regarding Commercial Life's alleged failure to pay benefits, the company points to Mr. Mimbs's deposition in which he acknowledges that prior to the filing of this action Commercial Life paid all medical benefits to which he was entitled. (Dep. Elvis Mimbs, Dec. 19, 1990, at 3). Commercial Life successfully carries its burden of production on this point.

Mr. Mimbs has not responded with other evidence which raises a genuine issue of material fact on this issue. Accordingly, Mr. Mimbs has failed to carry his burden on this point at summary judgment and is not entitled to recover damages for "unpaid" medical bills.

■ As to any recovery by Mr. Mimbs for Commercial Life's alleged failure to pay such benefits *promptly,* such a claim is limited as a matter of law to recovery of the penalties set forth in O.C.G.A. § 33–4–6 (limiting recovery for late payment of covered claim to 25% of insurer's liability plus attorney's fees). The penalty is available when a covered claim has not been paid within 60 days following demand and such refusal by the insurer is in bad faith. *Id.* Commercial Life's argument does not specifically address the "promptness" facet of the second cause of action, and accordingly whether Mr. Mimbs is entitled to recovery of a penalty is an issue that must be resolved at trial.

3. *Plaintiff's Tort Claims.*

■ The Amended Complaint's third cause of action is a tort claim attributed to Commercial Life's "complete disregard for the consequences" of actions which constituted breaches of a medical benefits insurance contract. "A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied." O.C.G.A. § 51–1–1 (1982). "Generally, a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicti." *Mauldin v. Sheffer,* 113 Ga.App. 874, 150 S.E.2d 150 (1966).

There are exceptions, however, to the general rule:

> It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him.... Such an independent harm may be found because of the relationship between the parties, or because of the defendant's calling or because of the nature of the harm.

*Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363, 365, 203 S.E.2d 587 (1973). Other federal courts reviewing Georgia law on this point have discerned the principle that, absent a special relationship apart from the contract (e.g., physician-patient, architect-client, contractor-landowner, attorney-client, bailor-bailee, common carrier-passenger), a tort action will lie only if the nature of the harm is bodily injury, injury to life and limb, injury to others, or damage to property other than the object of the contract. *Synthetic Industries, Inc. v. Whitlock, Inc.,* 439 F.Supp. 1297, 1300–01 (N.D.Ga.1977) (Henderson, J.); *accord Kaiser Aluminum & Chemical Corp. v. Ingersoll–Rand Co.,* 519 F.Supp. 60, 68–69 (S.D.Ga.1981) (Edenfield, J.). Otherwise, only a contract action is available. *Synthetic Industries,* 439 F.Supp. at 1301; *Kaiser Aluminum,* 519 F.Supp. at 69.

Defendant cites *Thomas v. Phoenix Mutual Life Ins. Co.,* 142 Ga.App. 550, 551, 236 S.E.2d 510 (1977), in support of the proposition that a contract of medical benefits insurance does not create a special relationship between insured and insurer which gives rise to extra-contractual duties authorizing recovery in tort. In *Thomas,* the defendant insurer had contended, prior to plaintiff's surgery, that the plaintiff's medical insurance coverage was limited to $1,000 as opposed to plaintiff's supposed $250,000. Plaintiff underwent surgery anyway and paid for the procedure himself. Plaintiff sued in tort, "because of" but not "under" the insurance contract, seeking damages for pain and suffering plus punitive damages. With a conclusory, one-sen-

tence statement, the appellate court announced that "the complaint ... clearly fail[ed] to show that there was any special relationship beyond the mere contractual one between [the plaintiff insured and the defendant insurer] which would authorize [the plaintiff] to bring a tort action 'because of' the contract." *Id.* at 552.

Commercial Life is correct, therefore, insofar as the lack of a special relationship is concerned in this case. That conclusion alone does not entirely dispose of the duty issue here, however, for it is crucial to note that in *Thomas* the court's opinion considered *only* the lack of a special relationship between the parties. When the nature of the alleged harm to the plaintiff here is considered, this Court determines that there *is* a duty imposed by law, and that an action in tort will lie for an alleged breach of that duty.

Upon this point, the fact-pattern and rationale of *American Express Co. v. Varnedoe,* 133 Ga.App. 437, 211 S.E.2d 392 (1974) are instructive. In *Varnedoe,* the plaintiff purchased an airline ticket with traveler's checks issued by the defendant, and then boarded a plane. Subsequent examination by a ticket agent revealed the word "void" on the checks, as a result of a concealed "self-destruct" mechanism which—without fault on the part of the purchaser—was activated when the checks were exposed to liquid. Although the defendant was then called by airline employees four times to verify the checks' negotiability, the defendant indicated the checks were non-negotiable. At a subsequent scheduled stop en route, security officers forced the plaintiff (who had been injured in an unrelated pre-flight incident) to leave the plane on crutches and abort the remainder of his flight. The plaintiff was told that the traveler's checks were worthless to the airline. He later sued the issuer of the traveler's checks in tort based upon negligence.

The Georgia Court of Appeals acknowledged the general rule "that to maintain an action ex delicto because of a breach of duty growing out of the contractual relation, the breach must be shown to have been a breach of duty imposed by law, and not merely a

breach [of a duty] imposed by the contract." *Id.* at 440, 211 S.E.2d 392. The court held, however, that "[t]here is here, over and above the [contract] duty of the issuer to honor the travelers checks on presentation, a duty [imposed by law] not to injure the holder by withholding credit which he has paid for and is entitled to receive, subjecting him to embarrassment, humiliation, loss of time, and physical pain." *Id.* at 440, 211 S.E.2d 392. Thus, the plaintiff in *Varnedoe* was not limited to an action for breach of contract, but might sue in tort based on negligence. *Id.* at 439, 211 S.E.2d 392.

In the present case, the purchaser of insurance benefits was allegedly dismissed from the hospital following repeated calls from a hospital employee to the insurer in an attempt to verify the patient's coverage. The nature of the alleged harm includes bodily harm in the form of "irreparable damage" to Mr. Mimbs's heart. When this combination of factors is considered, the Court finds that *Thomas* is distinguishable and that *Varnedoe* provides ample support for imposing an extra-contractual duty in law.

The Court acknowledges that an insurer's failure to perform contractual duties may, because of the object of the contract, generally only pose a danger of economic loss to the non-breaching party; even though such loss might cause severe hardship to the non-breaching party, the law does not impose an extra-contractual duty in such a case. Where a contract for medical benefits insurance is involved and the alleged harm caused by the insurer's breach of contract is bodily injury to the insured, however, the nature of the harm justifies imposition of an extra-contractual duty giving rise to an action in tort. An insurer which enters a contract to provide medical benefits insurance has a duty imposed by law not to defeat the insured's ability to obtain needed medical services and thereby cause harm to the health or life of the insured by negligently failing, upon pre-claim inquiry by a medical services provider, to verify the coverage for which the insured has paid. Given this extra-contractual duty, the tort claim in this case falls outside the general rule precluding recovery in tort. Furthermore, because this

particular cause of action is not one for late payment of an insurance claim, the insured's remedy is not limited to the penalty for late payment provided in O.C.G.A. § 33–4–6.

Thus, of the four elements of a negligence claim—duty, breach, causation, and injury—at least the duty element is present. Commercial Life further argues that, despite Mr. Mimbs's allegations, the delay in treatment did not cause injury to Mr. Mimbs's heart; the insurer points to the deposition of Mr. Mimbs's physician, Dr. Steven Garner, in support. Dr. Garner did *not* conclusively state an opinion that the delay had not caused damage to Mr. Mimbs's heart, however; instead, Dr. Garner stated in his deposition that he was not *"aware"* of such delay-caused injury. (Dep. Dr. Steven Garner at 19.) He admitted that he had not discussed Mr. Mimbs's treatment with the doctors in Augusta; the deposition indicates Dr. Garner's awareness was based upon his review of some medical records from Augusta. (*Id.*) He further admitted that there were existing records that he did not have regarding Mr. Mimbs's heart condition, including an evaluation of the heart's ejection fraction which may lend some credence to Mr. Mimbs's allegation regarding the change in his heart's condition. (*Id.* at 20.) Viewing the evidence in the light most favorable to the non-moving party, the Court concludes that Commercial Life has not carried its initial burden at summary judgment on the injury element of the claim.

Finally, Commercial Life argues that any tortious breach of duty by the insurer could not be the proximate cause of Mr. Mimbs's alleged damages, because Mr. Mimbs's heart problem existed prior to the time the duty could have been breached. While Dr. Garner's deposition does indicate that Mr. Mimbs's heart problem existed prior to the attempted verification of Mr. Mimbs's insurance coverage, that is not the crux of the matter. The allegation is that Commercial Life breached a duty to Mr. Mimbs, and that the breach resulted in a delay of treatment which caused *additional,* irreparable injury. Viewing the evidence in the light most favorable to the non-moving party, the Court con-cludes that Commercial Life has failed to carry its initial burden on this point.

### III. CONCLUSION

Commercial Life's Motion for Summary Judgment is hereby **GRANTED IN PART** and **DENIED IN PART.** The Motion is **GRANTED** as to the second cause of action (in contract) insofar as it concerns failure to pay benefits in accordance with the contract, and **GRANTED** as to the third cause of action (in tort) insofar as it is based upon failure to pay benefits. The motion is **DENIED** as to the first cause of action (in contract) for failure to verify insurance coverage, **DENIED** as to the second cause of action insofar as it concerns failure to pay benefits promptly, and **DENIED** as to the third cause of action (in tort) insofar as it is based upon failure to verify insurance coverage.