**Deborah Butler GRIGGERS, Plaintiff,**

v.

**EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.**

**No. 1:03–CV–3440–WSD.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 3, 2004.

---

James M. Poe, Office of James M. Poe, Atlanta, GA, for Plaintiff.

## *ORDER*

DUFFEY, District Judge.

This matter is currently before the Court on Plaintiff's Motion to Amend the Complaint [12 & 13].[1]

## I. BACKGROUND

Plaintiff Deborah Griggers ("Plaintiff") was employed as a nurse by Hemlock Anesthesia Associates ("Hemlock") beginning

on October 15, 1990. Like all of the physicians and nurses employed at Hemlock, Plaintiff applied for and received from Defendant a long-term disability insurance policy ("the Policy"). (Griggers Aff., attached to Plaintiff's Mot. to Amend as Exhibit A, ¶ 3.) These policies were a fringe benefit of employment with Hemlock and were issued to Plaintiff and other Hemlock employees under an employer group arrangement between Hemlock and Defendant. (*Id.*; Johnson Aff., attached to Defendant's Resp. to Mot. to Amend as Exhibit B, ¶ 5). As part of this arrangement, Defendant discounted by 10% the premium for the policies issued to Hemlock's employees, and all premiums were paid by Hemlock. (*Id.* at ¶ 6.) The Policy did not contain a conversion clause. (*Id.*)

Plaintiff resigned from Hemlock on January 10, 1996. Plaintiff was advised to keep the Policy in force by paying the premiums herself. (Griggers Aff. ¶ 4.) Plaintiff decided to do so and made premium payments on January 23, 1996, and February 21, 1996. (*Id.*) The Policy was not converted and Plaintiff did not apply for a new policy, nor was a new policy issued to her. By making premium payments after she resigned, Plaintiff simply kept in force the policy originally issued to her as a benefit of her employment with Hemlock. (*Id.*) Because she was continuing a previously issued policy, she continued to receive the 10% discount on her premium that Defendant gave to Hemlock under its employer group arrangement. (Johnson Aff. ¶ 5.)

On February 20, 1996, Plaintiff submitted a claim under the Policy, asserting she had become disabled due to major depression and anxiety. (Murley Aff., attached

---

1. Plaintiff filed her Motion to Amend the Complaint [12] on March 31, 2004. On April 5, 2004, Plaintiff supplemented her motion [13], providing copies of two exhibits inadver-

tently omitted from her March 31, 2004 materials. The Court deems these supplemental materials to have been filed with Plaintiff's motion.

to Defendant's Resp. to Mot. to Amend as Exhibit A, ¶ 6.) Plaintiff claimed her disability began on January 10, 1996, the day she resigned from Hemlock. (*Id.*) [2] Defendant approved Plaintiff's claim and began paying monthly disability benefits to her. (*Id.* at ¶ 7.) [3]

In July 2003, Defendant advised Plaintiff it discontinued disability payments to Plaintiff effective June 9, 2003, because it had concluded Plaintiff was no longer totally disabled within the meaning of the Policy. (*Id.* at ¶ 9.) Defendant further advised Plaintiff it had concluded Plaintiff ceased being disabled sometime during the summer of 2000. (*Id.*) Defendant told Plaintiff she was required to resume making premium payments if she wanted to keep the Policy in force. (*Id.*)

Plaintiff filed the instant lawsuit on November 13, 2003[1]. In her Complaint, she alleges an action "pursuant to the Employee Retirement Income Security Act of 1974" ("ERISA") for the purposes of recovering benefits due under the Policy and clarifying her right to future benefits. (Compl.¶ 1.) On January 13, 2004, Defendant filed its Answer and Counterclaim, denying that Plaintiff is entitled to benefits under the Policy and seeking to recover the value of benefits that it claims were fraudulently obtained by Plaintiff [3]. Thereafter, Plaintiff reevaluated the claims she alleged. Because she used her own funds after January 10, 1996, to pay the premium required to maintain the Policy, she now claims her action is not governed by ERISA, but is a simple breach of contact action governed by state law. Accordingly, she moves to amend her Complaint to delete references to ERISA so she may assert only claims under state law.

## II. DISCUSSION

■ Plaintiff moves for leave to amend her Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 15 provides that, after a responsive pleading has been served, a party may amend only by leave of court or by written consent of the adverse party. Fed.R.Civ.P. 15(a). Although the rule instructs that "leave shall be freely given when justice so requires," a district court may deny leave to amend for a number of reasons, including undue delay, bad faith, or when such amendment would be futile. *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir.2004). The decision whether to grant leave to amend rests in the sound discretion of the district court. *Id.* at 1262.

In this case, Plaintiff seeks to amend her Complaint to remove all references to ERISA and add factual allegations reflecting that, subsequent to her separation from Hemlock, Plaintiff made several premium payments on the Policy using her own funds. (Mot. to Amend at 2–3.) The stated goal of Plaintiff's proposed amendment is to litigate her grievance as a state law claim for breach of contract rather than as a claim under ERISA.[4] (*Id.*)

---

**2.** While it is not entirely clear, Plaintiff appears to claim she became disabled on the last day of her employment and thus is asserting a claim under the Policy at a time when the premium had been paid by Hemlock, and not her.

**3.** Pursuant to Defendant's premium benefit waiver, Plaintiff's two previous premium payments were refunded and her future premi-

ums were subtracted from her benefit payment. (Murley Aff. ¶ 8.)

**4.** Plaintiff initially stated that, if granted leave to amend, she intended to dismiss this case without prejudice and litigate her claim in state court, alleging that the amendment would destroy federal question jurisdiction. (Mot. to Amend at 3.) In its response to Plaintiff's motion, Defendant argued that, even if the Court were to permit the amendment de-

Defendant opposes the amendment on the grounds that it is futile. Defendant argues ERISA applies here and preempts the breach of contract claims Plaintiff now seeks to allege. (Resp. to Mot. to Amend [15] at 10–20.) Plaintiff agrees the "ultimate legal issue" raised by her motion is "whether this litigation ... is going to be governed by ERISA with its attendant preemption doctrine or ... will be a breach of contract claim with state law governing the rights of the [Plaintiff]." (Reply in Support of Mot. to Amend [18] at 3.) Thus, before the Court is the discrete issue of whether ERISA applies to this dispute and, if so, does it preempt the breach of contract claims sought to be added by Plaintiff. If preemption applies, Plaintiff's proposed amendment of the Complaint would be futile and leave to amend denied. *See Ramsom v. Admin. Comm. for Lightnet/WTG Special Income Prot. Program*, 820 F.Supp. 1429, 1432 (N.D.Ga.1993) (denying plaintiff's motion to amend where the state law claims to be added would be preempted by ERISA).

■ ERISA creates a comprehensive regulatory scheme for employee welfare benefit plans and provides the exclusive means by which the beneficiary of a plan covered by ERISA may bring a civil action to recover plan benefits, to enforce rights under a plan, or to clarify future rights. *See Gilbert v. Alta Health & Life Ins. Co.*, 276 F.3d 1292, 1295 (11th Cir.2001). ERISA preempts any and all state law claims that relate directly or indirectly to an employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a); *Shaw v.*

*Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *see also Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir.1997) (holding that state law claims "relate to" an ERISA plan for preemption purposes "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits."). The Eleventh Circuit and other circuits have "uniformly held that state law challenges to the denial of benefits under an employee benefit plan are preempted [by ERISA]." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir.1987). Plaintiff does not dispute that her proposed state law breach of contract claims relate to the denial of benefits under the Policy, but argues that ERISA does not apply because the Policy does not constitute part of an employee benefit plan covered by ERISA. (Reply in Support of Mot. to Amend at 5–14.)

Section 3(1) of ERISA defines an "employee benefit plan" to include "any plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits in the event of sickness, accident, disability, death or unemployment ...." 29 U.S.C. § 1002(1). Here, the Policy clearly was issued as part of a plan established by Hemlock for the purpose of providing for its participants benefits enumerated in Section 3(1). There is no dispute the Policy was covered by ERISA when it was issued. (Reply in Support of Mot. to

---

stroying federal question jurisdiction, the Court would retain jurisdiction over this case because the parties are diverse and the amount in controversy exceeds $75,000. (Resp. to Mot. to Amend at 20–24.) Plaintiff in her reply does not address the question of diversity jurisdiction but concedes that the presence of a counterclaim precludes dismiss-

al of this action. (Reply in Support of Mot. to Amend at 4–5.) Because the parties agree that the case will remain in this Court regardless of the Court's ruling on Plaintiff's motion, the Court does not address what effect, if any, the proposed amendment would have on this Court's jurisdiction.

Amend at 1–2.) However, Plaintiff alleges ERISA ceased to apply to the Policy after she resigned from Hemlock and kept the Policy in effect by paying the premium herself.

The Eleventh Circuit has not addressed whether an insurance policy originally obtained in connection with an ERISA plan and paid for by an employer is removed from ERISA coverage when the beneficiary terminates his or her employment and assumes responsibility for payment of the policy premium. *See Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1346–47 (11th Cir.1994). Several district courts in this Circuit have held that an individual policy issued in connection with an ERISA plan and paid for by the employer retains its ERISA-covered status when a beneficiary later assumes responsibility for payment of the policy premium. *See, e.g., Jaffe v. Provident Life & Accident Ins. Co.*, No. 99–6302, 2000 WL 349750, *4 n. 8 (S.D.Fla. March 21, 2000) (holding that employee's commencing payment of his own premiums did not affect court's determination that the policy was part of a plan "established or maintained" by his employer and thus covered by ERISA); *Stern v. Provident Life & Accident Ins. Co.*, 295 F.Supp.2d 1321, 1326 (M.D.Fla.2003) (holding that ERISA's unambiguous "establish or maintain" language dictates that change in the payor status of long-term disability insurance policies does not defeat ERISA coverage: "Because the plans were established as ERISA policies, they remain subject to ERISA. This is so even though the plans were not 'maintained' as ERISA policies [after employee assumed responsibility for payment of premiums].").

Plaintiff argues that because there is no Eleventh Circuit case on point, this Court is "not constrained by binding precedent and can look to the available precedent and the policies behind ERISA to determine if ERISA preemption should apply in this case." (Reply in Support of Mot. to Amend at 8.) Plaintiff urges the Court to rely on decisions in which courts have held that a policy issued as part of a group policy covered by ERISA is not subject to ERISA where the beneficiary, post-employment, converts it to an individual policy pursuant to express conversion rights conferred by the policy. (*Id.* at 9–14) (discussing *Demars v. CIGNA Corp.*, 173 F.3d 443 (1st Cir.1999).) Plaintiff requests the Court to apply the holdings of these cases, most notably the First Circuit's decision in *Demars.*[5] *Demars*, however, is not persuasive. The *Demars* opinion was carefully limited to the facts of that case and its policy arguments do not apply here.

In *Demars*, the plaintiff enrolled in a group long-term policy while employed by National Life of Vermont. *Id.* at 444. The policy contained a "conversion clause" that allowed an employee who left National Life to convert from the group disability coverage to an individual policy providing disability coverage. The question before the *Demars* court was "whether ERISA regulation extends to 'conversion policies'." *Id.* The court defined "conversion policy" to refer only to "a private (non-employer-financed) insurance policy obtained by a former employee, after termination, through the exercise of conversion rights." *Id.* at 444–45, n. 1.[6] The court noted that

---

**5.** The *Demars* decision criticizes the "once ERISA, always ERISA" reasoning of the *Jaffe* and *Stern* decisions, cited above.

**6.** The Court further stated: "We do not use the term 'conversion policy' to refer to the guaranteed option to convert from employer-

sponsored coverage to a private insurance policy (this is a 'conversion right'), nor do we use the term 'conversion policy' to refer to an employer plan that contains conversion rights".

the key question for ERISA purposes was whether, under Section (3)(1), the "conversion policy" was "established or maintained by an employer." *Id.* at 445–46. If it was, then ERISA applies. *Id.*

In holding that state law claims were not preempted in cases involving conversion polices, the *Demars* court focused on the fact of the conversion—specifically, that there was a termination of the policy issued under the plaintiff's benefit plan and the issuance of a new policy. The court spelled out the conversion process, and its effect. First, the plaintiff had to elect to convert from the group coverage to an individual policy. *Id.* at 444. An application submitted by the plaintiff had to be approved by the underwriter, and the underwriter then had to issue a certificate of insurance for the conversion policy. *Id.* In *Demars*, a new legal relationship was created between the plaintiff and the insurer because a new insurance policy was issued. This new relationship arose after the employer benefit group coverage was terminated through the plaintiff's exercise of her right to convert to an individual policy. The court held that, where a policy is converted, the new policy and the new relationship between the insurer and the policy holder were to be interpreted under state law.

The facts in this case are qualitatively different. Here there was no termination of the Policy under Hemlock's employee benefit plan. In fact, Plaintiff simply maintained the plan-issued Policy by paying the discounted premium Hemlock negotiated with Defendant. Unlike the plaintiff in *Demars*, Plaintiff's legal relationship with her insurer was not terminated—it continued. There was no conversion and no creation of a new relationship with Defendant.

To allow Plaintiff to assert state law claims for alleged violations of a policy while employees of Hemlock are permitted to assert only ERISA claims would disrupt the uniformity Congress sought to achieve when it passed ERISA. The Supreme Court has recognized that one of the principal purposes of ERISA is the elimination for employers of "the threat of conflicting and inconsistent state and local regulation" of employer benefit plans. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Plaintiff's argument that state law applies here would subject the policy issued to its employees to interpretation under ERISA, yet subject the very same policy issued to Plaintiff as a benefit of her employment to a very different set of state laws. Plaintiff's argument creates, rather than avoids, a threat of conflicting and inconsistent state and local regulations for Hemlock and other employers with similar benefit plans.

Moreover, the *Demars* court's reasoning was rejected by the Eleventh Circuit in *Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1346–47 (11th Cir.1994). In *Glass,* the plaintiff converted his employer-provided life insurance policy at the time of his discharge. *Id.* at 1346. This conversion removed the plaintiff's coverage from the active employees' group policy (the "ERISA plan") and moved the coverage to a group policy consisting of former employees. *Id.* The *Glass* court held that because the plaintiff's conversion policy was part of a group policy whose beneficiaries all had one thing in common—their previous enrollment in the ERISA plan—it was covered by ERISA: "Clearly, [the plaintiff's] ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan." *Id.*[7]

7. The *Glass* court distinguished the facts of    the case before it from those in *Mimbs v.*

The decision in *Glass* strongly suggests that conversion does not remove a policy from ERISA regulation where the ability of the beneficiary to obtain the conversion policy arises from the ERISA plan and the conversion policy remains "integrally linked" with the ERISA plan, regardless of whether the converted policy is an individual or group policy. The *Glass* court found the two plans "integrally linked" simply because the conversion policy's plan participants were all former participants in the ERISA plan. Thus, to be "integrally linked," the converted policy and the ERISA plan need only possess an important common element. The *Glass* decision is compelling precedent in this case, where the Policy was not converted but was simply a continuation of the policy issued under Hemlock's ERISA-covered plan.

In summary, it is undisputed that (1) the Policy was issued through Hemlock's ERISA-covered plan; and (2) the Policy, its coverage and its premium remained the same after Plaintiff resigned her employment and assumed responsibility for paying the premium. Under these circumstances, the plan, and the Policy issued under it, necessarily are covered by ERISA. Plaintiff's argument that ERISA ceased to apply once she began paying the Policy premium is inconsistent with precedent in this Circuit, and, if accepted, would invite the conflicting state and local regulation of employee benefit plans that Congress sought to prevent by enacting ERISA. Accordingly, the state law claims to be added to Plaintiff's Complaint are preempted by ERISA and Plaintiff's Motion to Amend is therefore DENIED.

### III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Amend the Complaint is **DENIED.**

---

*Commercial Life Ins. Co.*, 818 F.Supp. 1556 (S.D.Ga.1993). In *Mimbs*, the court held that a group policy which was converted to an individual policy pursuant to COBRA was no longer covered by ERISA. The court concluded that "once conversion has occurred and the policy is in force, there is no longer any 'integral connection' between the individual conversion policy and the ERISA plan that gave rise to the right to convert." *Mimbs*, 818 F.Supp. at 1562 (citations omitted). This holding did not apply in *Glass*, since "the conversion in the instant case, unlike that in *Mimbs*, did not actually create an individual policy." *Glass*, 33 F.3d at 1346.