**Jo Ann VAUGHN, Plaintiff,**

v.

**OWEN STEEL COMPANY, INC., and Royal Maccabees Life Insurance Company, Defendants.**

Civ. A. No. 6:94–2048–3.

United States District Court,
D. South Carolina,
Greenville Division.

Nov. 23, 1994.

Mark E. Tomaszek, Jr., Robert Frank Plaxco, Gilchrist Law Firm, Greenville, SC, for Jo Ann D. Vaughn.

Elizabeth Anne Carpentier, Sinkler & Boyd, P.A., Columbia, SC, Thomas Allen Bright, Greenville, SC, Virginia L. Vroegop, Sinkler & Boyd, P.A., Columbia, SC, Thomas M. Christina, Greenville, SC, for Owen Steel Co.

William Alexander Coates, Greenville, SC, for Royal Maccabees Life Ins.

## ORDER

GEORGE ROSS ANDERSON, Jr., District Judge.

This order is in response to Defendant's request for transfer to the nonjury roster in

this primarily-ERISA case. For the reasons set forth below, this Court denies this request and orders all issues to be tried to a jury. This jury will function as the factfinder as to some issues and in an advisory capacity only as to issues which should properly be tried to the Court.

The case concerns proceeds to a life insurance policy. Mrs. Vaughn, the named beneficiary, is the widow of the insured.

## BACKGROUND

Mr. Vaughn worked for Owen Steel Company, which insured his life under an ERISA plan. Royal Maccabees issued the group policy. The policy included a right to convert to an individual policy, without proof of insurability, should an insured cease to be a member of the insured class, such as by leaving his employment. The policy included the steps and time limits necessary to achieve this conversion. It also included a limited provision for a waiver of premiums, due to permanent, total disability, to commence nine months after the disability occurred.

Mr. Vaughn left Owen Steel March 27, 1991, and died July 25, 1992. Plaintiff alleges that he left due to permanent, total disability, which continued until his death. She also alleges that the Plan Administrator informed them that he would continue to be insured, without cost, until his 65th birthday, as long as he was permanently disabled. The Vaughns did not apply or pay for a conversion policy upon his retirement.

Plaintiff further alleges that by October, 1991, Mr. Vaughn was no longer able to see to his own affairs, and that in October, the Plan Administrator notified her that a mistake had been made and that Mr. Vaughn would have to buy a conversion policy from Royal Maccabees. Plaintiff alleges that she telephoned Royal Maccabees and requested a conversion policy; that Royal Maccabees agreed to its issuance; but that Royal Maccabees never sent documentation or request for payment, and that the two parties had no further contact until Mr. Vaughn's death. Shortly after his death, in October, 1992, Mrs. Vaughn filed a claim, which Royal Maccabees refused. Plaintiff filed suit in state court and Defendants, claiming ERISA preemption, removed to federal court and moved to transfer to the nonjury roster.

Plaintiff seeks relief from Owen for breach of contract and breach of fiduciary duty, both stemming from the benefits plan. Plaintiff acknowledges that these claims are preempted by ERISA, but claims a right to a jury trial on the first issue. Plaintiff also seeks relief from Royal Maccabees for breach of an oral contract (of conversion insurance), asserts that this is not an ERISA claim, and seeks a jury trial. Defendants assert that all the claims are ERISA claims and that no jury trial is available for any of them. Royal Maccabees also denies the forming or issuance of a conversion policy.

Before tackling the issue of the availability of a jury under ERISA, this Court must determine whether the claim against Royal Maccabees is preempted by ERISA.

## ERISA PREEMPTION

ERISA preempts state laws which relate to an employee benefit plan subject to ERISA. 29 U.S.C. § 1144(a). The Fourth Circuit has not ruled whether a claim for life insurance against a private insurer, which arose under a conversion clause, is an ERISA claim. The circuits are split; most reported cases, at any rate, deal with continuation health coverage.

Defendants assert that once ERISA, always ERISA. Plaintiff asserts that, while the right to a policy arose under the Plan, whether or not the policy issued, and any question of its breach, does not relate to the Plan and is not preempted by ERISA.

This Court follows the well-reasoned decision in *Mimbs v. Commercial Life Ins. Co.*, 818 F.Supp. 1556 (S.D. Georgia 1993). In that case, the court outlined which laws applied to questions concerning a conversion policy, and the reasoning behind ERISA preemption.

*Mimbs* involved continuation coverage and conversion policies for life and health. The court held that the continuation coverage was an ERISA question; more importantly, it held that the right to the conversion policy

was an ERISA issue, but that an alleged breach of that policy was not preempted by ERISA.

> Congress intended [ERISA] pre-emption to afford ... the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern only arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to *plans,* rather simply to *benefits.*

*Mimbs,* 818 F.Supp. at 1562, *quoting Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

> There is no showing that administering benefits under the individual conversion policy itself, once that policy is in effect, requires an ongoing program to meet the (former) employer's obligations under ERISA.

*Mimbs,* 818 F.Supp. at 1562.

The *Mimbs* court drew a distinction between "claims arising from the right to convert to an individual policy and claims arising from the conversion policy itself," because "[t]he conversion coverage itself, should the former employee elect to convert, is for an individual as opposed to a class of beneficiaries. There is no showing that the conversion coverage in this case contains the requisite elements of an ERISA plan." *Id.* at 1561–62.

This Court approves of and adopts this reasoning. Clearly, the Plan Administrator in the present case involved himself in the question of continuing the life insurance coverage for a number of months. The Plan provided for the availability of conversion coverage. Therefore, issues concerning the availability of a conversion policy, or continuation coverage, or the formation of an individual contract of insurance, are all preempted by ERISA. If the Court finds that Royal Maccabees did contract with the decedent (or his representative) for an individual policy, then any further issues concerning a breach of that policy are not preempted by ERISA and shall be decided by a jury according to state law, with the court exercising supplemental jurisdiction.

## JURY TRIAL

■ The next issue is the availability of a jury trial for ERISA questions. The Fourth Circuit has stated that ERISA actions are equitable and do not afford a jury trial. *Berry v. Ciba–Geigy,* 761 F.2d 1003 (4th Cir. 1985). Plaintiff argues, and Defendants dispute, that a later Supreme Court case (*Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)) opened the door for jury trials for some ERISA actions, and that the Seventh Amendment provides a separate requirement of a jury trial. Post *Firestone,* the Fourth Circuit has again reversed a decision for a jury trial under ERISA, citing *Berry,* but without discussion of *Firestone's* impact on the question or a Seventh Amendment analysis. For this reason, this Court considers the availability of jury trials under certain ERISA claims to be open in this circuit. ERISA itself is silent as to jury trials, but actions have traditionally been tried to the bench.

In *LeFebre v. Westinghouse Elec. Corp.,* 747 F.2d 197 (4th Cir.1984), the court reversed the trial court because the judge had applied a de novo standard of review rather than an arbitrary and capricious standard. The same year, the *Berry* court, relying on *LeFebre,* reversed an ERISA jury trial. The trial judge had charged the jury to apply an arbitrary and capricious standard; he had also allowed the jury to consider evidence outside the Administrator's record, thus making the review of his decision a de novo review. The Fourth Circuit said that an arbitrary and capricious standard should not be submitted to a jury, and that the de novo review was incorrect. The court also said that no jury trial rights obtain in equitable matters such as trust law.

In 1989, the Supreme Court impliedly overruled both Fourth Circuit cases. In *Firestone,* the Court, limiting its consideration to the standard of review for § 502 actions, held that the proper standard of review is de novo, (which is a legal standard). It characterized § 502 claims as analogous to

contract actions. Therefore, it can no longer be the law of this Circuit that § 502 claims are equitable *because the standard of review is arbitrary and capricious.*

In a later case, *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the Supreme Court approved the award of compensatory and punitive damages under § 502.

The Supreme Court has thus recast some ERISA claims as legal, without expressly so holding. Despite trust law language in ERISA and the Supreme Court cases, traditional trust law does not afford de novo review, compensatory damages, or punitive damages. The Supreme Court is following its analogy of contract law actions through to afford legal remedies. The logical conclusion is that, despite being couched within a statutory scheme which mirrors trust law, some ERISA claims and remedies are legal ones and thus should be afforded a jury trial.

Other district courts have reached the same conclusion. In *McDonald v. Artcraft Elec. Supply Co.,* 774 F.Supp. 29 (D.D.C. 1991), the court allowed a jury trial of a claim for denial of benefits, with one of the bases being § 502. In so doing, it referred to *Berry* more than once as an example of pre-*Firestone* law whose reasoning and validity were overruled by the Court, or were decided based on different situations than one constituting a legal claim. *Berry* analogised the claim for benefits as a breach of fiduciary duty. As the District of Columbia court stated:

> "The Supreme Court views [some] ERISA claims as analogous to contract actions prior to ERISA. Contract actions are legal in nature. Furthermore, they are generally fact-intensive disputes. In other words, they are quintessential jury issues. If a right to a jury existed prior to the passage of ERISA, then to hold that no such right exists under ERISA would 'afford less protection' to employee rights than they had before the Act was passed—a result the Supreme Court rejected in *Firestone.*"

*McDonald,* 774 F.Supp. at 34, *quoting* phrase from *Firestone.* The *McDonald* court also cited the *Ingersoll* opinion as additional compelling reason to interpret certain ERISA

actions as legal, not equitable. Other courts have reached similar decisions post-*Firestone.*

The Fourth Circuit has also analogised some ERISA actions to contract actions. The court, two years after *Berry,* specifically held § 502 claims to be analogous to contract actions. *Dameron v. Sinai Hospital of Baltimore, Inc.,* 815 F.2d 975 (4th Cir.1987). The court also cited *Berry* for the proposition that ERISA actions are equitable and do not afford a jury trial. Yet " '[T]he Seventh Amendment . . . applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century. . . .' When a statutory right is grounded on a traditional legal cause of action and traditional legal relief is available under the statute, the Seventh Amendment is implicated." *McDonald,* 774 F.Supp. at 35, *quoting Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). Prior to ERISA, breach of contract actions, with damages as the remedy, were legal actions requiring a jury. Accordingly, this court holds that such actions carry an implied jury right after the passage of ERISA.

The Fourth Circuit has addressed the question of jury trials under ERISA after *Firestone.* In *Biggers v. Wittek Indus., Inc.,* 4 F.3d. 291 (4th Cir.1993), the court reversed a jury trial decided under state law. First deciding that the state-law action was preempted by ERISA, the court remanded for a bench trial under ERISA. The sole reference to the propriety of a jury trial was a citation to *Berry* and the statement that a jury trial was improper. With the grounds for *Berry* overturned by *Firestone,* this court does not consider *Biggers* to be binding.

■ Plaintiff in the present case is suing for breach of contract with resulting money damages. Plaintiff is also suing for breach of fiduciary duty. Although both claims must be brought under ERISA in order to ensure a uniform national law affecting retiree benefit plans, the § 502 claim for damages is recognized as being derived from and analogous to a state-law contract claim. There

are legal standards of review and damages available. The mere requirement that such a claim be brought pursuant to ERISA does not transform the action or remedy into an equitable one or affect the Seventh Amendment right to a jury trial of legal issues. The contract action against Owen thus must be tried to a jury.

■ Moreover, the fact-intensive nature of the case, and the closely-interrelated jury/nonjury questions, lend itself to the assistance of an advisory jury on the nonjury issues. The court will not be bound, of course, on the determination of equitable matters by the advisory jury, but will make its own decision after considering the advice of the advisory jury.

THEREFORE, it is ORDERED that:

The denial of benefits (contract) claim against Owen Steel is an ERISA claim and shall be tried to a jury;

The breach of fiduciary duty claim against Owen Steel is an ERISA claim and shall be tried as a bench trial, with the above-mentioned jury functioning in an advisory capacity only regarding this claim;

The breach of contract claim against Royal Maccabees entails both ERISA and state law; the ERISA elements shall be tried as a bench trial, with the above-mentioned jury functioning in an advisory capacity only. Should the court find that a contract of insurance arose between the decedent and Royal Maccabees, the jury shall complete a special verdict form deciding the legal issue of whether that contract was breached.

IT IS SO ORDERED.