**Patrick POWERS and Lisa M. Powers,**

v.

**UNITED HEALTH PLANS OF NEW ENGLAND, INC.**

**No. CIV.A. 95–12633–RGS.**

United States District Court, D. Massachusetts.

Oct. 6, 1997.

Glen DeValerio, Berman, DeValerio & Pease, Boston, MA, for Plaintiff.

Nicholas DiGiovanni, Jr., Joseph McConnell, Morgan, Brown & Joy, Boston, MA, A. Lauriston Parks, Hanson, Curran, Parks & Whitman, Providence, RI, for Defendant.

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

Patrick and Lisa Powers are the protagonists in this putative class action. They allege that defendant United Health Plans of New England, Inc. (United), a health insurance carrier, violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and the Massachusetts Consumer Protection Statute, G.L. c. 93A, by misrepresenting the co-payment obligation of subscribers to certain of United's health insurance plans.[1] The Powers derive their claim to act as class representatives from their purchase of a United insurance conversion contract following Lisa Powers' termination by her former employer, Back East, Inc. On October 9, 1996, United brought this motion for summary judgment, arguing that the Powers had failed to exhaust their administrative remedies and more fundamentally, that the court lacks federal question jurisdiction because the Powers' policy is not governed by ERISA.[2] A hearing was held on the motion on May 20, 1997.

### FACTS

The undisputed facts are these.[3] From July 15, 1993, to February 28, 1994, Lisa Powers was insured under a Back East group health insurance plan sponsored by United. The Back East Plan was governed by ERISA. It contained the following clause.

### CONVERSION

A Covered Person who ceases to be eligible for PLAN Coverage for the reasons

---

1. The Powers also allege breach of contract and misrepresentation.

2. United filed a motion to dismiss on March 1, 1996, raising both the exhaustion and jurisdiction arguments. On April 24, 1996, the motion was denied without prejudice pending further discovery.

3. United correctly points out that the Powers are not entitled to the usual deference afforded a party seeking to avoid summary judgment as they bear the burden of establishing jurisdiction. *Palumbo v. Roberti,* 834 F.Supp. 46, 50 (D.Mass. 1993).

stated in termination conditions 8 or 9 above or upon termination of continuation of Coverage, and who continues to reside in the Service Area, may make application to PLAN for coverage under a conversion contract without furnishing evidence of insurability. Application and payment of the initial Health Service Fees must be made within thirty-one (31) days after termination of Coverage under the Contract. A conversion contract shall be issued in accordance with the terms and conditions in effect at the time of application.

Back East terminated Lisa Powers on February 28, 1994. On March 11, 1994, United notified Lisa Powers that she was eligible to apply for continuing coverage under the conversion clause. On March 12, 1994, Lisa Powers submitted a "Conversion Application" to United for a "non-group policy."[4] United approved the application and issued a Certificate of Coverage under its Plan # 141, which became retroactively effective on March 1, 1994. Plan # 141 required subscribers to make a 20% co-payment towards the reimbursement of "Eligible Expenses." Section 6.7 of the Certificate of Coverage stated that:

[t]he Policy is being purchased by the Enrolling Unit to provide benefits under a welfare plan governed by the Employee Retirement Income Security Act 29 U.S.C. § 1001 et seq. PLAN is not the Plan Administrator or named fiduciary of the welfare plan as those terms are used in ERISA.

"Enrolling Unit" was defined as "the employer or other defined or otherwise legally constituted group with whom the policy is made." On August 1, 1994, United switched the Powers' insurance coverage to Plan # 166 which required a 30% co-payment.

In August of 1994, Lisa Powers incurred a substantial medical bill as result of a cesarean delivery. United assessed the Powers the full 30% co-payment. In September of 1994, the Powers learned that United had privately negotiated a reduced fee for the procedure. According to the Powers' Complaint, United had negotiated similar reduced fee agreements covering most reimbursable procedures with its medical providers. On September 23, 1994, the Powers complained to United about the undisclosed discount and the inflated co-payment.

Section 5.1 of United's Certificate of Coverage required that an insured present any billing dispute in writing. If the complaint was denied, Section 5.2 of the Certificate allowed the insured to seek a hearing before the Members Relations Committee. Section 6.2 of the Certificate stated:

[n]o legal proceeding or any action may be brought without first completing the complaint procedure specified in Section 5 of this Certificate.

On October 1, 1994, the Powers presented a written complaint to United.[5] On December 9, 1994, the Members Appeal Committee wrote to the Powers rejecting the complaint. The letter concluded by stating that:

[i]f you disagree with our decision and wish to present your case to the Member Relations Committee, please contact Cheryl Gauvin (401) 737-6900, ext. 5182, within five days of receipt of this letter.

On December 5, 1995, the Powers filed this lawsuit without taking an administrative appeal.

## DISCUSSION

United contends that the Powers' policy is not governed by ERISA and that the court is therefore without jurisdiction to hear this case. Alternatively, United argues that the Powers failed to exhaust the remedies afforded by the plan as ERISA requires. See *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821, 825–826 (1st Cir.1988).[6]

---

4. The parties do not dispute that Lisa Powers' eligibility for continuing coverage derives solely from the conversion clause. Powers was not eligible for COBRA coverage because Back East employed fewer than 20 employees during the calendar year preceding her termination.

5. The Powers also complained to the Rhode Island Department of Business Regulation (DBR).

6. If the court concludes that the Powers' conversion policy is not governed by ERISA, the second issue is obviously moot.

The legal dispute is very narrow. The parties agree that ERISA governed the Back East Plan and would govern any policy issued as a post-termination COBRA benefit. See *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 817 (9th Cir.1992).[7] The question before the court is whether the Powers' non-group conversion plan is similarly governed by ERISA. While there is no First Circuit caselaw directly on point there is a wealth of conflicting caselaw from courts in other circuits.

The issue is complicated by the tendency of insurers (and some courts) to use ERISA and COBRA terms interchangeably.[8] Section 1161(a) of ERISA requires that employers provide covered employees with the option of continuing their medical benefits when their employment ends. While often referred to as "COBRA coverage," ERISA in fact describes this interim election as "continuation coverage." Continuation coverage must mirror the coverage of the employer's ERISA plan, 29 U.S.C. § 1162(1), and must be offered for a period of eighteen months (§ 1162(2)(A)(i)). At the end of the eighteen month period, the insurer is required to offer "conversion" coverage. 29 U.S.C. § 1162(5). Under ERISA, to obtain conversion coverage, an employee must first be eligible for (and must select) COBRA continuation coverage. Although United labeled the policy it issued to the Powers as a "conversion" policy it is not disputed that Lisa Powers was ineligible for COBRA coverage and therefore was ineligible for conversion coverage as that term is used in § 1162(5) of ERISA.

The Powers argue that their United policy is nonetheless governed by ERISA because its roots are traceable to Lisa Powers' enrollment in Back East's ERISA Plan. The Powers marshal several cases which adopt this genealogical test. In *Glass, supra*, 33 F.3d at 1346, the Eleventh Circuit held that a life insurance policy issued pursuant to a clause in an ERISA plan allowing a terminated employee to transfer from an employee group plan to individual coverage fell under ERISA. For the *Glass* court, the determining factor was that:

> [t]he conversion [of the insurance] ... did not actually create an individual policy. It removed [the ex-employee's] coverage from a group policy consisting of actively employed Silk Greenhouse employees and moved the coverage to a group policy of ex-Silk Greenhouse employees. [The ex-employee's] insurance was part of a group policy whose beneficiaries all had one thing in common—they had enrolled as Silk Greenhouse employees in the original ERISA plan. Because the instant case is distinguishable from [cases involving individual plans] in this respect, we need not decide whether conversion of a policy might defeat ERISA coverage in other circumstances. Clearly, [the ex-employee's] ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan. In this case, conversion of the Elect life coverage did not defeat ERISA regulation.

*Id.* at 1346–1347.[9]

The Powers also point to *Rasmussen v. Metropolitan Life Insurance Co.*, 675 F.Supp. 1497 (W.D.La.1987). In *Rasmussen*, the husband's group plan provided that upon termination an employee's medical benefits would cease, but that plan participants would have the right to purchase one of three individual conversion policies.[10] The wife purchased the conversion policy offering the most generous benefits (which as a dependent she was entitled to do), but after a

---

7. United acknowledges that "claims of former employees during the mandated COBRA continuation period have been traditionally governed by ERISA." United's Memorandum, pp. 6–7.

8. See *Glass v. United of Omaha Life Insurance Co.*, 33 F.3d 1341, 1346 (11th Cir.1994).

9. Cf. *Cvelbar v. CBI Illinois Inc.*, 106 F.3d 1368, 1376 (7th Cir.1997) ("[I]t is possible for a one-person arrangement to qualify as an ERISA plan").

10. the court in *Rasmussen* did not describe the employee's option as a COBRA benefit presumably because the option of choosing among three different levels of coverage is inconsistent with the mandate of § 1162(5) that continuation coverage provide terms identical to those of the original plan.

complicated pregnancy, found herself in a dispute with the insurer over the actual extent of her coverage. The court held that the individual conversion policy was governed by ERISA.

> The [employer's] Plan provided each employee and qualified dependent with the privilege of obtaining an individual policy of hospital expense and surgical operation insurance *if group coverage ceased due to termination of employment.* . . . Thus, plaintiffs' right to the converted policy as well as a designation of benefits to be contained therein existed solely by virtue of an ERISA employee health benefit plan. . . .

*Id.* at 1506.

Similarly, in *Mays v. UNUM Life Insurance Co. of America,* 1995 WL 317102 (N.D.Ill., May 23, 1995), an employee had been given the option of converting her group life insurance plan to an individual plan upon termination. The court held that the converted plan was governed by ERISA because:

> [t]he predicate to the conversion right was coverage under the group plan. If [the ex-employee] had not received life insurance under the group plan, she would not have been able to convert her group policy to an individual policy, and would have no cause of action arising from the conversion policy. Because [the ex-employee] would not have been eligible for a conversion policy without first belonging to an ERISA group plan, . . . the individual conversion policy is an extension of the ERISA plan and is governed by ERISA.

*Id.* at *2–3.

The Powers also cite a district court opinion in the Sixth Circuit, *Reynolds v. Massachusetts Casualty Insurance Co.,* 900 F.Supp. 915 (E.D.Tenn.1995), *rev'd on other grounds,* 113 F.3d 1450 (6th Cir.1997), which follows *Mays.* In the *Reynolds* case, a terminated employee exercised his right under a disability insurance plan to continue coverage by assuming payment of the premiums. The group policy offered continuation coverage even though the employer, because of its size, was not required to do so by COBRA. When the insurer subsequently denied the

employee's disability claim, he sued, arguing that the "conversion" of his insurance to an individual plan fell outside of ERISA because "there [wa]s no longer any 'integral connection' between the individual conversion policy and the ERISA plan that gave rise to the right to convert." *Reynolds,* 113 F.3d at 1453, quoting *Mimbs v. Commercial Life Ins. Co.,* 818 F.Supp. 1556, 1562 (S.D.Ga. 1993).

The Sixth Circuit rejected any analogy between Reynolds' policy and a COBRA conversion policy. The Court held that the policy was more akin to a COBRA continuation policy.

> We are not persuaded that Mr. Reynolds' post-employment coverage was 'conversion' coverage. As stated above, [the employer] did not [originally] buy a group policy. What it bought was five or six individual policies, including one for Mr. Reynolds. When Reynolds left [his employment,] his individual policy remained in force without change.

> Because Mr. Reynolds' coverage remained in effect under the same policy that had been in force since [the time the individual policy was purchased], his post-employment coverage bears a strong resemblance to the 'continuation coverage' that the plaintiff in *Mimbs* enjoyed for a limited period of time following the termination of his employment.

113 F.3d at 1453.

The Powers have also rely on several analogous COBRA cases. In *Shah v. Connecticut General Life Insurance Co.,* 1993 WL 376131, *1 (N.D.Ill.1993), a former employee of Deak International, Inc. purchased an individual continuation policy from an insurer "pursuant to his statutory right of conversion as defined in [ERISA] §§ 1161–1162." Finding himself involuntarily removed to federal court after bringing a lawsuit against the insurer, the plaintiff sought to remand the action, claiming that his policy was not governed by ERISA. The court denied the motion, reasoning that:

> the opportunity to convert the group plan into an individual policy is, itself, a benefit of the group plan governed by ERISA.

In addition, the broad definition of an ERISA plan "participant" makes it clear that ERISA was designed to apply precisely to the circumstances of the present case. The plaintiff, at the time of conversion, was a "former employee ... who ... may become eligible to receive a benefit of any type from an employee benefit plan...." 29 U.S.C. § 1002(7). As previously discussed, the conversion itself is such a benefit, and the plaintiff is a former employee who has become eligible for that benefit. By virtue of that participation, plaintiff cannot now assert that ERISA does not govern his claims against the defendant. Thus, this court concludes that the individual policy is an extension of the group plan, and that ERISA applies to any claim arising under it.

*Id.* at *2. See also *Nechero v. Provident Life & Accident Insurance Co.*, 795 F.Supp. 374, 380 (D.N.M.1992) (a conversion policy mandated by COBRA was governed by ERISA because the plan arose from the employment relationship, "was implemented with administrative assistance from [the employer,] and was integrally connected to the group plan in which [the plaintiffs] participated when Mr. Nechero was an active employee").[11] Cf. *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408 (9th Cir.1995) ("We have held repeatedly that, because [conversion policies mandated by COBRA] are derived from ERISA plans, they continue to be governed by ERISA even after conversion").

United, for its part, insists that it sold the Powers the policy in their individual capacities, and that ERISA does not apply.[12] United relies principally on *Mimbs v. Commercial Life Insurance Co.*, supra. The employer in *Mimbs* had offered its employees (as required by ERISA) eighteen months of COBRA continuation coverage and the option to purchase conversion coverage when the COBRA benefits expired. The plaintiff in *Mimbs* purchased both the continuation and the conversion policies. After the conversion, a coverage dispute arose. The *Mimbs* court held that ERISA no longer governed. The court distinguished claims arising from the right to convert coverage from claims arising under a conversion policy fully in effect. The court reasoned:

> [t]he conversion coverage itself, should the former employee elect to convert, is for an individual as opposed to a class of beneficiaries. There is no showing that the conversion coverage in this case contains the requisite elements of an ERISA plan. Furthermore once conversion has occurred and the policy is in force, there is no longer any "integral connection" between the individual conversion policy and the ERISA plan that gave rise to the right to convert. But see *Beal v. Jefferson–Pilot Life Insurance Co.*, 798 F.Supp. 673, 675 (S.D.Ala.1992) (finding conversion policy governed by ERISA because right to convert arose from existence of ERISA plan).

> The concerns behind ERISA pre-emption are not implicated by state-law claims arising from obligations incurred under the conversion policy itself.

818 F.Supp. at 1561–1562.[13]

The Powers argue that *Mimbs* is decided incorrectly and, in any event, is factually distinguishable because it involved conversion coverage mandated by COBRA for which Lisa Powers was not eligible. Moreover, the Powers argue that in some respects *Mimbs* supports their position because the court in *Mimbs* recognized that COBRA *continuation* coverage is governed by ERISA, in part, because the right to such coverage is "predicated upon the existence of an ERISA plan" and, therefore, is "integrally related to an ERISA plan." 818 F.Supp. at 1561. The

---

**11.** See also *Painter v. Golden Rule Insurance Co.*, 121 F.3d 436 (8th Cir.1997).

**12.** United argues that its statement in the Certificate of Coverage explaining that the policy is governed by ERISA is not binding because a party cannot contractually confer jurisdiction on a federal court where none otherwise exists.

**13.** United points out that *Beal* (and *Rasmussen*, supra), deal with allegations of fraud and misrepresentation during the conversion from one policy to another and not claims for benefits under a newly converted policy. This distinction is an important one because while I agree that the right to convert is a plan benefit governed by ERISA, this is not necessarily true of the newly created policy. But see *Mays*, supra, 1995 WL 317102, *4.

*Mimbs* court, however, made salient note of the fact that under ERISA the continuation coverage must be identical to the coverage offered by the original ERISA plan. ERISA continuation coverage, in other words, operates to guarantee a terminated employee continued membership in the underlying ERISA group plan. However, once the conversion is completed, membership in the employer's ERISA plan by definition lapses.

United also relies upon *McCale v. Union Labor Life Insurance Co.*, 881 F.Supp. 233 (S.D.W.Va.1995) and *Vaughn v. Owen Steel Co., Inc.*, 871 F.Supp. 247 (D.S.C.1994), cases which follow *Mimbs.* The opinion in *McCale* is particularly instructive.

> This Court agrees with the reasoning of *Vaughn,* the only court in this Circuit to address the issue. ERISA is designed to preempt state law insofar as the state law relates to an employee benefit plan. Although the right to convert insurance coverage held under a group plan into an individual policy arises by virtue of the group plan, once the policy is converted it is exactly what it purports to be—an *individual* policy—it is no longer part of the employee benefit plan because it has been *converted.* Attachment of ERISA preemption to an individual plan simply because the right to the coverage arose under a group plan would extend ERISA's reach beyond the employee benefit plan. Therefore, the Court concludes claims arising under the conversion policy itself, and not from the right to the conversion policy, are not preempted by ERISA and are governed by state law.

881 F.Supp. at 235–236.

While the issue is a close one (if only because of its complexity), I am persuaded by *Mimbs* and *McCale* that when the Powers' claims arose, they were covered by a private contract of insurance beyond the reach of ERISA.[14] I say this for three reasons. First, while there is much to be said for ERISA's purpose of bringing national uniformity to the rules governing benefit plans offered by or through employers, this animating rationale loses its force once the employer is no longer involved in the insurance relationship. See *Fort Halifax Packing Co. Inc. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) (the ERISA concern "only arises . . . with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation"). United's role as a fiduciary for the Back East Plan had similarly come to an end. The duties that United owes to the Powers are not dependent on its role as an ERISA fiduciary. They are derived from principles of state law governing contracts and insurance. Were the situation reversed, and Lisa Powers, after bringing a similar state court action against United, were to find herself involuntarily removed to federal court on a claim of ERISA preemption, we would ask whether her claims against United could be stated without reference to the existence of the Back East Plan. See *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 142, 111 S.Ct. 478, 483–84, 484–85, 112 L.Ed.2d 474 (1990). The answer would clearly be "yes."

Second, a determination that the Powers' individual contract of insurance is governed by ERISA could work a potential unfairness on ex-employees. This is so because some holders of individual policies would find their remedies limited by ERISA solely because of their prior employment, while another purchaser of the identical policy who had no similar employment history could pursue the usually more generous remedies afforded by state law.

And third, it is desirable that in a constitutional arrangement based upon respect for dual sovereignty, a federal statute, even one with the most laudable of goals, have some definite boundaries. Cf. *Morstein v. National Ins. Serv., Inc.,* 93 F.3d 715, 721–722 (11th Cir.1996) (en banc). In searching out a delimiting principle in this context, the conversion event seems a practicable choice, on the one hand because it is temporally defined,

---

**14.** While it is true that an individual policy may be governed by ERISA, the determining factor is whether the employer has ongoing responsibilities for the administration of the policy. The record before the court, contains no evidence that Back East had any responsibility for the administration of the Powers' policy, either individually or as members of the United plan.

and on the other, because it is the point at which the link between the former employee and her antecedent group plan is most likely to be severed.

## ORDER

For the foregoing reasons, defendant's motion for summary judgment is *ALLOWED,* the court having determined that jurisdiction does not lie under ERISA. The exhaustion of remedies issue is *MOOT.* The court takes no position on the merits of the Powers' complaint against United.